Good morning. It's our pleasure to have sitting with us this morning, Judge Richard Posner from the United States Court of Appeals for the Seventh Circuit, sitting by designation of the Chief Justice. We appreciate his assistance and enjoy his company. Mr. Wettich. Good morning. I'm here on behalf of Calgon Carbon Corporation in an appeal from the Board of Patent Appeals and Interference. This case, the patent, the 628 patent, which is the one before you, was in litigation and was commenced in the Northern District of Illinois in 2002. The request for re-examination was filed the same month that the case was filed. So what mistake did the Board make? What mistake did the Board make? The Board found that the claim on, which was the representative claim before, was obvious and anticipated by a prior art reference, Hollinger. That's the mistake. And what's wrong with that? Well, Hollinger doesn't show the invention for anticipation. Hollinger does not include... Where does it not show? It does not have two porous... Well, let me explain what the claim is. Two protective porous layers. Right. But you've got figure two in that that shows a layer 10 and a layer 30. That's two. They're protective, and under the Gurley porosity test, they indicate some porosity. Why are they not two surrounding protective porous layers? They're not protective. They're not protective because 30 has material in it that is not protective. They're not cloth or fabric as required by the claim. They're not disposed within a container. What's the difference between cloth and fabric in this context? Not much. That's why they're cloth or fabric. I think fabric has a wider weave than perhaps cloth. What makes it non-protective? Excuse me. Well, it has a buffer in it, 30. And I don't think 10 does. 10 could be protective if it's inside the case. But the other part of the claim, which isn't met, is that none of this is in a container that's sealed from the atmosphere. Also, the carbon that they say is also... But it's preserving archival articles. What is, Your Honor? Hollinger talked about preserving archival articles. We're not arguing that. But it doesn't do it the way our claim does. A lot of things preserve archival articles. This claim has a specific structure which is not shown in any of the prior art. It has a container. What is the function? So you have, if I understand correctly, correct me if I'm wrong, you have this layer of fabric or cloth or whatever you want to call it between the interior of the box and the carbon layer. Yes, carbon cloth. What is the function of having something between the carbon layer and the box? The function of it is it permits the gas that's in the box to go all the way around the carbon and be absorbed by it. If it were up against it, you'd have one layer on the front, which may or may not absorb it all. If you read the patent, the invention is that it will preserve... It's a jewelry box. And it will preserve jewelry from 15 to 35 years. There isn't anything on the market, there isn't anything that does that. If you look at the other... So you've lined the box, is that what you've done? Essentially, yes. And you've lined it with what exactly? Well, it's a carbon cloth on both sides of which is a fabric. And it is positioned around the box so that it encompasses the metal object inside. It's for metal objects. And they don't have... Hollinger doesn't have a carbon layer underneath? They have carbon interspersed with a buffer. They have carbon... Theirs is paper. Their whole operation is a paper mill. And you put carbon and buffer and you calendar the paper. You do what to the paper? You press it into sheets as it comes from a pulp. And what is in those sheets is a buffer or a buffer and carbon. The claims of this case are not to the... And you don't have the alkaline, right? We have no buffer. You don't have the buffer. So instead of the buffer you have... We don't have anything instead of it. Well, I thought you had a lining that they didn't have. Well, our lining is the protective cloth with carbon. So you have a lining with a carbon cloth and they have the alkaline buffer? Is that the difference between the two? Their invention, to the extent you can make out an invention, is that what they have are layers of paper, essentially. Some layers have... If you look at figure 7 in their patent, you can have up to 4, 5, 6 layers. Some have carbon admixed with it, some have carbon and buffer. They have all sorts of permeations of that. And you have, instead of that, instead of the paper, you have the cloth. We have a carbon cloth. The carbon cloth, but you don't have the alkaline buffer. We have no alkaline in ours. Now you suggested a little earlier that Hollinger was different because it doesn't have an enclosure, but it does discuss that the archival article may be held in a container. Yes, but the container is the container comprising the envelope or a box made out of these layers. It is not in a sealed container. Why can't one of skill and the art make a pretty easy conversion there from a container to a jewel box? Well, they didn't. What do you mean they didn't? That's not the question. That's an anticipation question. We're talking something greater here. And they have an alternative obviousness finding. Correct. The issue is, yes, we have a jewelry box. And this, and I'm saying this, Hollinger could put jewelry in there. It's disclosed you can put jewelry in there. Yes, it does say that. Yes. What's a sealed container mean? It's a box with a lid that substantially seals out the atmosphere from egress. Is it really airtight? It's not airtight. It just says it's sealed. I think the disclosure is that the box lid is sealed. So yours is sealed, but Hollinger is not sealed? Their box could be sealed, but it is a self-contained container outside of our box. We have different elements. We have a box. How is your box different from their box? Their box is the protective layers with the carbon and the buffer. They have no outside box. That's the difference. We're trying to prevent the ingress of whatever the atmospheric air is into this. If you're arguing that the preservation article is paper in Hollinger, then can you help me with claims 29 and 30? I don't know what 29 and 30 are, but I'll be happy to look at them. You're going to see they're more than paper. Teaching a substrate of fibrous, woven, nonwoven material. Well, that could be paper. Paper is woven and fibrous, yes. It could also be. The point is that that could be paper. That's what Hollinger is teaching. Well, I don't know that that's what Hollinger is teaching. I don't see any teaching in the specification. Everything in Hollinger may be. I mean, I don't teach anything. I say it could be this or it could be that. There's a lot of could-bes this and could-be that. And one of skill in the art can take that and put it together, right? One skill in the art, but which one of these skill in the art pictures do they take? I mean, you have a whole litany. Why do you pick one? Figure two. With the 10 and 30? Yeah, 10 and 30. So you take that and you put it together with the fact that they talk about having a container and you've got a lined box. Well, that doesn't teach it. You would look to do that after you saw ours. This is the broadest type of hindsight reconstruction. Picking and choosing little bits out of the reference. Yeah, I can go in after I've invented it and pick and choose which ones are these, but you can go through this reference and there are literally 30 or 40 different permeations of each of the things they're talking about. How does one skill in the art pick the one that is our invention? Yeah, you can pick them. You can pick ones with three layers. If you look at figure seven, you've got all sorts of layers. Why wouldn't you pick one of those? It would be obvious to me as one skill in the art, which I'm not, to pick one that had more protection. Put the vapor seal in. They teach a vapor seal. The difference between this and most of our cases, though, is that all of these elements are in the same reference. We aren't picking things from one field of art and pulling it in from a different field of art and somehow combining them by a hindsight reference. This is all in one reference, Hollinger. I appreciate that. It isn't the blueprint situation where we're choosing from this piece of art and that piece of art in retrospect. This is all in one reference. Doesn't that change things a bit? I don't think so. Why? How do you pick all of these things that are disclosed in there and come up with our invention? No, it isn't that many. We're talking about an alkaline buffer, an adsorbent, a container. We don't have an alkaline buffer. But wouldn't one of skill in the art know that activated carbon is going to pull impurities out of the air? I think that's... We've never argued otherwise. Ours is a structure. We're not claiming that we have activated carbon. We have a structure with certain physical parameters in it. That's the claim. One of the keys here, though, is that this is kind of the KSR situation where you've got a very limited number of alternatives to test and put together to find your slightly different, if it is different, combination. This isn't pulling together thousands of things and selecting from them. This is a very... We've got just a few elements. Adsorbents, buffers, and containers. Right. But nobody arranged them in this arrangement. That's the difference. And it came out with a different result. All of the tests show that you get very much extended life in that box. There's no test in theirs that they get any life. There's a huge difference. You're right. It's one reference. But all the other references mitigate. If you look at Winother, which showed just putting carbon in a case around... It didn't work. It didn't work to prevent tarnish. I mean, there's teachings that are against it. And so I think that... So what you did, you have this sealed container and you have the carbon cloth underneath as well as on top of the jewelry. Is that what's involved? It surrounds the metal, yes. It could be underneath and on top, but it typically surrounds it so that any gases leaking in through the perimeter of the box, it's not hermetically sealed.  People open and close it and use it, but it still protects the jewelry, as the patent says, for 15 plus years. There's carbon around it, carbon cloth, which is the preferred embodiment, protected by fabric so that air can go through it and the protection is to protect the jewelry from touching the carbon, where all of the ingredients from the atmosphere are. And as Pollinger provides in his... He said, well, absorption's good, but guess what? You bring in hydrogen sulfide and it's going to corrode, so we have to have a buffer in there. That's his teaching. We don't have a buffer. We have a protective layer. And it's not the world's greatest invention, I guess, but it works, it has commercial value, and nobody ever did it until we did it. And they've been storing jewelry since Pharoah put it in the pyramid. Why don't we hear from the government now? But, Solicitor, now, you've exhausted your rebuttal time. We'll give it back to you, and they can have extra time if they need it. Ms. Lynch? Good morning. May it please the Court, Representative Claim 1 is unpatentable, and the Board made numerous rejections of this claim. The first was the 102-103 rejection over Hollinger. Yeah, but Hollinger, if you read it, is really teaching a synergistic effect of an alkaline buffer plus an adsorbent. It's not teaching a jewelry box. I think there's two parts to that question, Your Honor. There are? Okay, first the synergy part. It's really teaching a synergism. It's not talking about an apparatus to protect jewelry. I agree that Hollinger teaches a synergism, but it also teaches that an adsorbent alone works. And I can point you to two places in Hollinger's disclosure that does that. The first is at column 7 on A-101-3. Column 7. From there? Lines 41 to 43. And although the first sentence talks about the synergistic effect, the second sentence says, for example, the adsorbent may capture various impurities and prevent them from contacting and damaging the archival article. So what Hollinger is teaching is that the adsorbent alone works, but when they add a buffer to it, they get a synergistic effect. If you also look at the... How is the buffer added? Is that in the same cloth, or is that a separate layer or what? Hollinger teaches that it can be in many different permutations. I think if you look at A-101-1 at column 4, it says the alkaline buffer and the adsorbent may be distributed in the layers in any configuration. For example, the buffer and the adsorbent may be interspersed in a single layer or they can be contained in different layers. So the adsorbent alone works... But this isn't really a classic 102 case, is it? Anticipation case. You're picking and choosing elements from here and there in a very broad Hollinger article that's really discussing something far different from a jewelry box. I disagree that Hollinger is discussing something far different from a jewelry box. Hollinger is teaching a way to preserve archival objects. He's talking about a chemical synergism that occurs when you combine a buffer and an adsorbent. And it seems a bit different than what we're talking about with this invention, right? I disagree, Your Honor. I think both of them are talking about preserving archival articles. Hollinger specifically mentions preserving metals and electronic components. So even though he says adding a buffer gives a synergism... But again, it's a laundry list and you're expecting us to pick a few things out of this laundry list and a few things out of this laundry list and a few things out of this laundry list and come up with their invention. Is that anticipation? I don't think there are that many different variables that one has to pick from, that they're all laundry lists of them. I think Hollinger is a broad disclosure and explains different ways of preserving archival objects. And then you've got to kind of intuit that one of skill in the art would know that an adsorbent is going to pull impurities out of the air, don't you? No, I think that was well known and Calgon admits that, and I think if you actually... Well, but you're saying it's well known. That's the point. You have to add to all of this that feature that's of knowledge of skill in the art, not necessarily disclosed by Hollinger. So that's not really anticipation, is it? That's obviousness. If this Court finds that Hollinger doesn't anticipate, it certainly is obvious over Hollinger, but we believe that every element is in Hollinger. And I can point you to another place where Hollinger... If we get to obviousness, do they get a chance to throw in their secondary considerations and do we send it back to give them that chance? They never raise secondary considerations and they've had obviousness rejections before. So they chose not to. I'm still struggling with trying to visualize these two things. So does Hollinger just have this layer of carbon with the alkaline probably in it, this piece of cloth or something, lying on top of this stuff, or is this the lining of a box where you have the carbon and the alkaline as part of the lining? If you go to A1011, Your Honor, at column 4, lines 38- Which one and which reference is that? I'm sorry, Hollinger. That's Hollinger in column 4? Yes. A1011, column 4, beginning at line 38. It says, for example, the archival article may be held in a container which is made of a sturdy box board having a layered preservation article lining a surface of the interior. So Hollinger specifically teaches lining. So it's a line. That's why, I guess, your opponent calls it a fabric rather than a cloth because it's the lining of a box. I'm not sure why he calls it a fabric rather than a cloth. Well, because you wouldn't really- Because he says it's not protective. Well, Hollinger actually specifically says it is protective. What does protected mean? Well, what Hollinger talks about is that the carbon cloth can leave carbon marks on the article that you're trying to protect. And so if you put these layers around it, you protect the carbon cloth from actually discoloring. The layer is what? It's between the carbon cloth and the object? Well, Hollinger teaches two layers, actually. But yes, what they specifically talk about is protecting the object held within. So there's a box, and then there's a layer of the carbon alkaline fabric, and then there's an interior liner to keep the carbon from discoloring the object? Is that what it is? Right. In figure two, there would be two- And so what then is Calgan's? I'm sorry, Your Honor? What is the difference? The difference between what? Between the Hollinger and his? I don't think there is any difference, Your Honor. I think- I mean, there's the sealed container, and the alkaline is missing. So, because I thought he emphasized that they also had this interior lining going around. In Calgan's invention? That's correct, Your Honor. But Hollinger- But you say that's the same as Hollinger. Hollinger specifically teaches aligning. And if you look at figure five, it teaches a closed box, so I think it teaches a sealable container as well. But what about their argument that 30 in figure two is not a protective porous layer? Well, I think Dr. Trampos actually admitted that it was porous, Your Honor. And if we want to look at his declaration, it said, I believe it said- Well, it has a significantly different Gurley rating. Yes, Your Honor, it does. And so it's less- Layer 10. Layer 10. That's correct, Your Honor. Why then don't they have some point that this is not porous as they meant porous? Well, Your Honor, then they should have put Gurley porosity values specifically in their claims if they wanted to limit it. The claims have no specific requirement of any specific level of porosity. And as I said, Mr. Trampos at A634, paragraph 23 of his declaration, says that Layer 30 would have low porosity. So I believe they've admitted that point. If Your Honors decide that they want to move on from the Hollinger reference, there are three alternative rejections of Claim 1 that I'm happy to talk about if there are questions. He mentioned as well the teaching away point on Winter 30. Do you want to address that? Yes, Your Honor. What Calgon does in that case is they take a few sentences out of Winter 30 and try and say that that's a teaching away. And admittedly, in Winter 30's own tests, he didn't get results quite as strong as the Getty study, which is cited in the Winter 30 study. But I think if you read Winter 30 as a whole, you see that it does teach that you can prevent tarnish on metal objects by lining a container with carbon cloth. And I can go through some of the specific findings of Winter 30 with you if you'd like. Would you like me to do that? No. So if you look at Winter 30... If you look at A1047, Column 1... Is that Winter 30? That's in Winter 30, Your Honor. Under the passive scavenger materials, the second-to-last sentence, he specifically, Winter 30 says, when the test coupons were separated from the coated carbon cloth by two layers of test fabrics linen, no corrosion or tarnish was observed. So Winter 30 specifically said that in this case, there was no corrosion or tarnish. He also cites the Getty case, which Getty was an exhaustive study done by the Getty Conservation Museum, and they found that activated carbon cloth was the most effective of 15 absorbents in getting rid of formaldehyde and hydrogen sulfide and sulfur dioxide. Wouldn't sealing the container reinforce the effect of the carbon? I don't know, but I'm just wondering. I think what the Getty study and what Winter 30 talked about was that sometimes the containers themselves can emit pollutants, and so, yes, you would think that sealing it would keep out the atmospheric pollutants, but depending on what the container is made of, sometimes you may also be introducing additional pollutants into the container. Of course, if you're talking about a museum, wouldn't they have their artifacts exhibited in a display case? So they couldn't have 360 degrees layering. Right, Your Honor, and so they would put it around as best as they could, but if it was to look at, if it was in a display case to look at, then there would have to be part of it that you could see. But the Shakespeare reference, which actually had display containers, also talked about sealed containers, because obviously what museums do as well is they have to keep them in archives in the back. So if Your Honors have no further questions, I yield my time. Thank you. Mr. Weddick. Mr. Weddick, you and I had a little conversation about protectiveness and whether or not there was a protective layer exhibited by Hollinger, and when Ms. Lynch took me to Column 7, I looked down to line 64 in Hollinger. The preservation material may include a protective layer, which is positioned between the article to be preserved and the other layers of the preservation article. That sounds to me like it's teaching precisely what we were discussing earlier. Well, that's no different than what Winother, looking at Winother, the portion that Ms. Lynch mentioned, this was the Passive Scavengers on 1047, where the samples of the carbon were coated on both sides to protect it from touching. It's the same thing in... And Layer 30 in the Figure 2 is going to be the exterior protective layer, right? That's correct. That will be the external. If it's made into a box, that will be the outside of the box. Going on to Column 8, a protective layer may also be useful to prevent the preservation article from discolorations. Exactly on point with what we discussed earlier, isn't it? That's right, but it's not on both sides of the protective of the carbon. It's against the wall. I'm not arguing about that. We agree. Winother teaches that in the... I understand, but it's the same concept. Why do you have a protective layer between the carbon layer and the wall, the interior wall of the box? Because that fabric is porous, very porous, and it lets the gas in the container go to all sides of the carbon that's in it. That's one of the features, or those two protective layers, because the gases within the container go up one side, and you can use the other side of the carbon cloth to also adsorb. So it has much higher capacity. It also protects, again, for the same reason that was mentioned, is that the carbon itself can put marks on it. Hollinger teaches that. That's what it says right here in column 8 of Hollinger. Discolorations such as carbon marks on the archival article. Right, and that's one of the reasons they also put buffer in, because the hollingers and sulfide that's collected on the carbon is the thing that makes the marks. So they add buffers to their material, and that's what's different about ours. We don't have buffers. We don't suggest buffers. And if you look at Winnetherd, it teaches against, pretty much, the Shakespeare, which is the carbon cloth. The same carbon cloth that we use in ours. If you look at page 1050, it said, in other words, despite the presence of these passive scavengers, the concentrations of sulfur pollutants remain barely acceptable on the level of the four cases. They were cases, like our cases, that were closed. I don't understand. How can anything get between the carbon layer and the interior wall of the box? Because the carbon layer is fastened to the interior wall. In whose? In yours. In theirs, in Hollinger. Well, because... You want to put a protective layer between the wall and the carbon cloth. I don't understand. What could get between the carbon cloth and the wall of the box that would cause discoloration? We have cloth that surrounds and protects the carbon cloth, which is the adsorber. It is positioned against the wall to permit gases to flow behind it. The front part protects against the jewelry or the metal object from touching. Now, that I understand. But you mean there's a space? You want to have a space between the carbon cloth and the interior wall of the box? That's correct. And why is that? And that's for the flow of gases within the box, that they can go behind. That's the difference. It's a different box than they have. They don't teach that. They don't suggest it. They put a buffer in to ameliorate the problem of the carbon. All right. Thank you very much, Your Honors. Thank you. Okay, just a minute.